# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

| | |
|---|---|
| AMY THOMAS; JOHN THOMAS; CAROLE MURPHEY; and SMITH MURPHEY | PLAINTIFFS |
| V. | NO. 3:13-CV-00109-DMB-JMV |
| FIREROCK PRODUCTS, LLC; and GENERAL SHALE BRICK, INC. | DEFENDANTS |

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANT GENERAL SHALE BRICK'S MOTION TO DISMISS

This is a product liability action brought under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq., and Mississippi state law. In their amended complaint, Plaintiffs Amy Thomas, John Thomas, Carole Murphey, and Smith Murphey allege that Defendant General Shale Brick, Inc., sold them defective fireplace construction materials manufactured by Defendant Fire Rock[1] Products, LLC. Doc. #47. Before the Court is Defendant General Shale Brick's motion to dismiss. Doc. #48.

## I
## Applicable Standards

As a general matter, "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In the event a complaint falls short of this directive, a defendant may move to dismiss the claim for "failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

---

[1] The amended complaint identifies the entity as "FireRock." Doc. #47. However, the company answered as "Fire Rock." Doc. #22.

In considering the interplay between Rule 8 and Rule 12, the United States Supreme Court has explained that:

> To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–58 (2007)). Under the Rule 12(b)(6) standard, a "court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011) (internal quotation marks and punctuation omitted).

## II
## Factual Allegations

Taking the allegations of the complaint and the documents attached to the complaint as true, the Court derives the following facts:

On an unknown date in 2005, Plaintiffs Carole and Smith Murphey purchased 220 Fire Rock 9" split firebricks from Defendant General Shale Brick. Doc. #47 at ¶ 6. The bricks were delivered to the Murpheys on November 10, 2005. *Id*. Also in 2005, Plaintiffs Amy and John Thomas purchased 300 Fire Rock 9" split firebricks from General Shale. *Id.* at ¶ 7. The bricks were delivered to the Thomases on October 28, 2005. *Id.*

Before and after the delivery of the firebricks, representatives of General Shale informed Plaintiffs that the "Fire[]Rock products would have a warranty, which would include a twenty … year warranty against any and all defects in workmanship and materials." Doc. #47 at ¶ 9.

Representatives of General Shale and Fire Rock also informed the plaintiffs that the firebricks "have a one hundred … year life expectancy and would likely outlast plaintiffs' homes." *Id*.

The Murpheys and Thomases installed fireplaces in their homes using the Fire Rock firebricks purchased from General Shale. Doc. # 47 at ¶ 11. After several uses of their fireplaces, Plaintiffs noticed "severe cracking" in the Fire Rock firebricks. *Id*. A subsequent inspection revealed heat damage to electrical wiring located behind a fireplace in the Thomases' home. *Id.* at ¶ 13.

At an unknown time, Plaintiffs notified Defendants of the damage to the firebricks. Doc. #47 at ¶ 14. Following this notice, "Defendant Fire[]Rock and Defendant General Shale acted in concert to resolve the problems with plaintiffs' fireplaces …." *Id*. Plaintiffs allege that "[t]hroughout this process, plaintiffs relied upon defendants' efforts to repair and replace the defective fireplace materials and refrained from filing suit while the defendants were engaging in repair efforts." *Id*.

In or around May 2009, Plaintiffs notified Defendants that the initial repair attempts had failed. Doc. #47 at ¶ 14. In May 2009, Plaintiffs met with a representative from General Shale, who informed Plaintiffs that "it should not cost [them] anything to have the fireplaces fixed and that Fire[]Rock and General Shale were working together to remedy the problem." *Id*. "A few weeks later," a repairman "performed extensive work" on the Thomases' fireplace. *Id*. At the conclusion of the work, "plaintiffs"[2] were informed that the problems with the firebricks had been fixed. *Id*. In "late 2009 or early 2010[, the] plaintiffs realized that their fireplaces were not fixed." *Id*. After one more unsuccessful repair attempt, Plaintiffs initiated this action. *Id*.

---

[2] The complaint is unclear as to whether the word "plaintiffs" in this paragraph of the complaint includes the Murpheys, the Thomases, or all of them.

In their amended complaint, Plaintiffs assert claims for: (1) "breach of express warranties," (2) "breach of implied warranty of fitness for a particular purpose;" (3) "breach of implied warranty of merchantability," (4) violations of the Magnuson-Moss Act, and (5) "equitable estoppel." Doc. #47. Defendant General Shale filed the instant motion to dismiss on December 23, 2013.

## III
## Analysis

In its motion to dismiss, General Shale argues that: (1) it is immune from liability under the Mississippi Products Liability Act ("MPLA"); (2) it made no express warranty to Plaintiffs; and (3) Plaintiffs' claims are barred by the applicable statutes of limitations. Doc. #49 at 5.

### A. The Statutes of Limitations

It is undisputed that Plaintiffs' state and federal claims are subject to Mississippi's Uniform Commercial Code's six-year statute of limitations applicable to breaches of contracts of sale, breaches of express warranties, and breaches of implied warranties.[3] Miss. Code Ann. § 75-2-725(1). Plaintiffs argue that General Shale is equitably estopped from asserting the statutes of limitations and that the statutes of limitations do not bar the claims at issue in this action. Doc. #54 at 11–16.

"[T]he question of whether equitable estoppel will lie in an action based upon federal law is a question to be determined with reference to the federal law of estoppel." *Mangaroo v. Nelson*, 864 F.2d 1202, 1205 n.3 (5th Cir. 1989). In contrast, state law applies where equitable estoppel is asserted to prevent a statute of limitations defense. *See Kaufman ex rel. Kaufman v. Robinson Property Group Ltd. P'ship*, 331 Fed. App'x. 276, 277 (5th Cir. 2008). Courts are

---

[3] The Magnuson-Moss Act borrows its statute of limitations from a state's Uniform Commercial Code. *See Murungi v. Mercedes Benz Credit Corp.*, 192 F.Supp.2d 71, 78– 79 (W.D.N.Y. 2001) (applying statute of limitations from New York's Uniform Commercial Code to Magnuson-Moss action); *see also Snyder v. Boston Whaler, Inc.*, 892 F.Supp. 955, 960 (W.D. Mich. 1994) (applying UCC statute of limitations).

4

split on the law to apply where, as here, a federal cause of action "borrows" from a state statute of limitations. *Pearl v. City of Long Beach*, 296 F.3d 76, 83 (2d Cir. 2002) (collecting cases).

While the Fifth Circuit appears to have not explicitly decided the body of law to determine whether equitable estoppel claims prevent the assertion of borrowed statutes of limitations, it has held that state equitable tolling principles control in § 1983 actions. *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998). Section 1983 claims, like Magnuson-Moss claims, borrow state statutes of limitations. *Id.* Accordingly, the Court concludes that state law equitable estoppel principals should be applied to Magnuson-Moss claims. *Id.*; *see also Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1199 (9th Cir. 1988) ("Where a district court applies or borrows a state statute of limitations, it is also required to apply the state's equitable exceptions, to the extent these are consistent with federal law.").

Mississippi law has long recognized "that the doctrine of equitable estoppel may, in a proper case, be invoked to prevent [a] defendant from relying upon the statute of limitations." *Izard v. Mikell*, 163 So. 498, 499 (Miss. 1935). To invoke this doctrine, "the plaintiff must show … that '(1) it was induced by the conduct of the defendant not to file its complaint sooner, (2) resulting in its claim being barred by the applicable limitations, and (3) the defendant knew or had reason to know that such consequences would follow.'" *Townes v. Rusty Ellis Builder, Inc.*, 98 So.3d 1046, 1055 (Miss. 2012) (internal punctuation omitted) (quoting *Harrison Enters., Inc. d/b/a Paulding Cable Co. v. Trilogy Commc'ns, Inc.*, 818 So.2d 1088, 1095 (Miss. 2002)).

In arguing that equitable estoppel prevents the assertion of the statutes of limitations in this case, Plaintiffs rely heavily on *Townes*. Doc. #54 at 11. In *Townes*, the Mississippi Supreme Court found a genuine issue of material fact as to the appropriateness of equitable estoppel in a breach of warranty action where evidence showed that the defendant-builder "inspected the

residence, [r]ecommended remedial measures and … promised to repair the defects." 98 So.3d at 1049.

Here, Plaintiffs have alleged that, like the defendant in *Townes*, General Shale promised to make repairs on the firebricks and that the repair attempts and assurances induced a delay in the filing of claims. Doc. #47 at ¶¶ 14, 16. Taking these allegations as true and drawing all reasonable inferences from the same, the Court concludes that, for purposes of General Shale's motion to dismiss: (1) Plaintiffs were induced by the conduct of General Shale to delay filing a complaint; (2) the inducement resulted in the claims being time barred; and (3) General Shale knew or should have known that its assurances would have the result of inducing Plaintiffs to fail to file their claims within the limitations periods. Accordingly, General Shale's motion to dismiss based on the applicable statutes of limitations must be denied.

### B. The Mississippi Products Liability Act

General Shale next argues that Plaintiffs' warranty claims[4] must fail because General Shale is an "innocent seller," as that term is defined in the Mississippi Products Liability Act. Doc. #49 at 5. Plaintiffs respond that the innocent seller provision of the MPLA does not apply to the claims in their Complaint and that, even if it did, General Shale does not qualify as an innocent seller under the statute. Doc. #54 at 9.

#### 1. Scope of Innocent Seller Provision

At the time period relevant to this action,[5] the MPLA provided:

---

[4] Without argument or citation, General Shale appears to assert that the federal claim brought under the Magnuson-Moss Act is also subject to the innocent seller provision. Doc. #49 at 8. This argument is foreclosed by the Supremacy Clause of the Constitution. *See Purnell v. Norned Shipping B.V.*, 801 F.2d 152, 156 (3d Cir. 1986) ("Having recognized the existence of such a federal claim, we are constrained to hold that, under the supremacy clause, that claim cannot be preempted or impaired by state law."); *Hughes v. Tobacco Inst.*, No. 1:99-cv-163, 2000 WL 34004261, at *4 (E.D. Tex. 2000) (Texas products liability provision "cannot preclude plaintiffs' federal law claims for RICO and violations of 15 U.S.C. § 1, *et seq.* These claims are based on federal statutes, not state law. State law cannot preclude a federal cause of action.").

[5] As explained below, on March 17, 2014, the Mississippi Legislature approved an amendment to the MPLA. 2014 Miss. Laws WL No. 48 (H.B. 680). The statute, which goes into "force from and after July 1, 2014," does not apply

> In any action alleging that a product is defective pursuant to paragraph (a) of this section, the seller of a product other than the manufacturer shall not be liable unless the seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; or the seller altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought; or the seller had actual or constructive knowledge of the defective condition of the product at the time he supplied the product. It is the intent of this section to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product.

Miss. Code Ann. § 11-1-63(h) (2004).

"Subsection (h) of the MPLA is referred to as the innocent seller exemption." *Murray v. Gen. Motors, L.L.C.*, 478 Fed. App'x. 175, 179 n.5 (5th Cir. 2012). In arguing that such liability exemption does not apply to their claims, Plaintiffs rely exclusively on *McKee v. Bowers Window & Door Co., Inc.*, which held that the MPLA "does not abrogate a statutory cause of action for breach of implied warranty as grounds for recovery, or, for that manner, any warranty claims." 64 So.3d 926, 940 (Miss. 2011) (quoting *Bennett v. Madakasira*, 821 So.2d 794, 808 (Miss. 2002), *abrogated on other grounds by Hutzel v. City of Jackson*, 33 So.3d 1116 (Miss. 2010)) (internal punctuation omitted). In essence, Plaintiffs contend that the language of *McKee* prohibits a defendant from invoking the innocent seller exemption in breach of warranty actions.

The Fifth Circuit, in an unpublished decision, considered and rejected the contention "that the 'innocent seller' exemption does not prohibit [plaintiffs] from bringing an express warranty claim pursuant to the Mississippi Uniform Commercial Code …." *Murray*, 478 Fed. App'x at 179. In so holding, the Fifth Circuit, citing *McKee*, wrote that "although the Mississippi Supreme Court has held that the MPLA does not preclude a claim for breach of warranty, it is still subject to the innocent seller exemption in a products liability action." *Id*.

---

to this action. *Tie Reace Hollingsworth ex rel. McDonald v. City of Laurel*, 808 So.2d 950, 954 (Miss. 2002) ("if a statute is to apply 'effective from and after passage' it is not to apply to causes of action that have accrued prior to the passage of the statute").

(citing *Garner v. Cooksey*, No. 2:11-cv-255, 2012 WL 968026, at *3–4 (S.D. Miss. Mar. 21, 2012)).

While unpublished Fifth Circuit cases are persuasive authority,[6] in diversity actions arising from Mississippi law, federal courts "apply Mississippi law as interpreted by the Mississippi state courts …. In the absence of on-point Mississippi law, [the] primary obligation is to make an *Erie* guess as to how the Mississippi Supreme Court would decide the question …." *Keen v. Miller Envtl. Grp.*, 702 F.3d 239, 243 (5th Cir. 2012) (internal punctuation and citations omitted). "In making an *Erie* guess … this court must consider (1) lower state court decisions and Supreme Court dicta, (2) the general rule on the issue, (3) the rule in those other states referenced by Mississippi courts in formulating the substantive law of Mississippi, and (4) other legal sources including treatises and law review commentaries." *Samples v. Hall of Mississippi, Inc.*, 673 F.Supp. 1413, 1416 (N.D. Miss. 1987).

As an initial matter, the Court must consider whether *McKee* represents "on-point Mississippi law" so as to obviate the need for an *Erie* guess. *Keen*, 702 F.3d at 243. In this regard, the question becomes whether *McKee*'s directive that the MPLA "does not abrogate a statutory cause of action for breach of implied warranty as grounds for recovery," amounts to a holding that the innocent seller provision may not be used to bar breach of warranty claims. Insofar as "abrogate" means "[t]o abolish (a law or custom) by formal or authoritative action,"[7] the quoted *McKee* language merely held that the MPLA did not *destroy* breach of warranty causes of action. The Court did not consider or address whether the MPLA *modified* warranty

---

[6] *See* 5th Cir. R. 47.5.4

[7] Black's Law Dictionary (9th ed. 2009), abrogate.

actions. Accordingly, in the absence of additional Mississippi Supreme Court jurisprudence,[8] the Court must predict how the Mississippi Supreme Court would decide the question of whether the MPLA's innocent seller provision applies to breach of warranty claims.

"The primary rule of construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein." *Bailey v. Al-Mefty*, 807 So.2d 1203, 1206 (Miss. 2001). "When interpreting a statute that is not ambiguous, [the Mississippi Supreme] Court will apply the plain meaning of the statute." *Pitalo v. GPCH-GP, Inc.*, 933 So.2d 927, 929 (Miss. 2006). "[W]here [the statute] is ambiguous the court, in determining the legislative intent, may look not only to the language used but also to its historical background, its subject matter, and the purposes and objects to be accomplished." *Bailey*, 807 So.2d at 1206.

In its heading, the MPLA explicitly provides that its provisions govern "*in any action for damages caused by a product* except for commercial damage to the product itself." Miss. Code Ann. § 11-1-63 (emphasis added). The innocent seller provision applies to "any action alleging that a product is defective pursuant to paragraph (a) of [the MPLA]." *Id*. Paragraph (a), in turn, sets forth requirements for liability to attach to a seller. *Id*.

While no Mississippi state court has ruled on the issue, federal courts in the state have found that the plain language of the MPLA is ambiguous as to the scope of the innocent seller provision. *Land v. Agco Corp.*, No. 1:08-cv-102, 2008 WL 4056224, at *3 (N.D. Miss. Aug. 25, 2008) (MPLA "is not clear on its face"); *Jones v. Gen. Motors Corp.*, No. 3:06-cv-00608, 2007 WL 1610478, at *2 (S.D. Miss. Jun. 1, 2007) (looking to legislative intent to interpret innocent seller provision). This Court agrees and turns to the intent of the innocent seller provision.

---

[8] A second Mississippi Supreme Court decision used near-identical language. *See Bennett v. Madakasira*, 821 So.2d 794, 808 (Miss. 2002) ("[T]hough the MPLA creates a cause of action in tort for breach of express warranty, it does not preclude the breach of implied warranty claims under the Mississippi Uniform Commercial Code in products liability actions. In other words, the MPLA does not abrogate a statutory cause of action for breach of implied warranty as grounds for recovery.") (internal citation omitted).

9

In ascertaining the intent of the innocent seller provision, the *Jones* and *Land* courts focused on the statutory language of the innocent seller provision, which provides "[i]t is the intent of this section to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product." *Jones*, 2007 WL 1610478, at *2; *Land*, 2008 WL 4056224, at *3. The *Jones* court also looked to "the title of the enacting legislation: 'An act to … provide that a product seller other than a manufacturer shall not be liable for a latent defect if the seller is a mere conduit who purchased the product from a reputable manufacturer.'" *Jones*, 2007 WL 1610478, at *2 (citing H.B. No. 13, 1st. Ex. Sess. (Miss. 2004)) (emphasis omitted). Based on such, both courts held that the innocent seller provision applied to all product liability claims. *Id.*; *Land*, 2008 WL 4056224, at *3.

The Court finds the reasoning of the *Jones* and *Land* courts persuasive and holds that the Mississippi legislature intended the innocent seller provision to apply to all causes of action for damages caused by a product. Thus, when a plaintiff brings an action against a seller for damages caused by a product, the innocent seller provision applies, unless the action is limited to commercial damages to the product itself.[9] *Id.*; *see also Murray*, 478 Fed. App'x at 179.

Here, it is undisputed that Plaintiffs seek recovery for damages other than to the firebricks themselves. Accordingly, the state law claims for breach of warranty are subject to the innocent seller provision of the MPLA.

---

[9] This conclusion is buttressed by the March 2014 amendment to the MPLA which clarified that the acts governed by the statute "include[d], but [were] not limited to, any action based on a theory of strict liability in tort, negligence or *breach of implied warranty* …." 2014 Miss. Laws WL No. 48 (H.B. 680) (emphasis added); *see also Grant Center Hosp. of Mississippi, Inc. v. Health Grp. of Jackson, Mississippi, Inc.*, 528 So.2d 804, 810 (Miss. 1988) ("In construing a statute, a court may look to later acts of the legislature to ascertain the correct meaning of a prior statute. This principle of statutory construction is well recognized, and its sense is apparent.") (internal citations omitted).

### 2. Is General Shale an Innocent Seller?

As explained above, the MPLA immunizes "innocent sellers" from liability in most actions for damages caused by a product. General Shale contends that Plaintiffs have failed to plead that General Shale was not an innocent seller and that, therefore, the state law actions must be dismissed. Doc. #49 at 8. This argument fails because the innocent seller provision is an affirmative defense.

"In order for dismissal to be appropriate on the basis of an affirmative defense, the defense must be established on the face of the complaint." *Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F.Supp.2d 938, 959 (E.D. Tex. 2011) (citing *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, N.A.,*, 467 F.3d 466, 470 (5th Cir. 2006)). "In diversity cases … whether a contention is an affirmative defense must be determined according to state law." *Kerr v. Smith Petroleum Co.*, 896 F.Supp. 602, 604 (E.D. La. 1995) (citing *Morgan Guar. Trust Co. of New York v. Blum*, 649 F.2d 342, 344 (5th Cir. 1981)).

The MPLA's provisions provide six circumstances under which a defendant "shall not be liable." *See* Miss. Code Ann. § 11-1-63 (2004). Three of these provisions—paragraphs (a), (c), and (f)—provide that the defendant "shall not be liable if the claimant does not prove" specific facts. *Id*. The remaining paragraphs, including the innocent seller provision, merely provide that the defendant "shall not be liable" unless certain facts are present. *Id*.

Although the Mississippi Supreme Court has not ruled on whether the innocent seller provision is an affirmative defense, it has held that the MPLA contains "a series of affirmative defenses, any one of which, if the defendant prevailed upon, could result in success to the defendants, *i.e.,* 'shall not be liable.'" *R.J. Reynolds Tobacco Co. v. King*, 921 So.2d 268, 273 (Miss. 2005); *see also Mississippi Valley Silica Co., Inc. v. Eastman*, 92 So.3d 666, 667 (Miss.

2012) ("MVS answered, asserting many affirmative defenses, including the provisions of Section 11-1-63 …."). Proof that the MPLA contains affirmative defenses, of which the innocent seller provision is one, may also be found in the fact that language placing the burden on the plaintiff, which is present in other sections of the MPLA, is notably absent from the innocent seller provision. *See In re Clemons*, 441 B.R. 519, 521 (N.D. Miss. 2010) ("If the Mississippi Legislature had desired to narrow the types of 'motor vehicles' affected by the Exemption Statute, it certainly knew how to add restricting language to accomplish that goal.").

For these reasons, the Court concludes that, given the opportunity, the Mississippi Supreme Court would hold that the innocent seller provision is an affirmative defense under the MPLA. Accordingly, dismissal based on the innocent seller provision is only appropriate if it is apparent from the face of the complaint. *EPCO*, 467 F.3d at 470.

To be considered an innocent seller, the seller must not have: (1) "exercised substantial control over [the defective] aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought," or (2) "altered or modified the product [in a way that] was a substantial factor in causing the harm for which recovery of damages is sought," or (3) "had actual or constructive knowledge of the defective condition of the product at the time he supplied the product." Miss. Code Ann. § 11-1-63 (2004). The absence of the three innocent seller prongs is not apparent from the face of the complaint. Indeed, Plaintiffs explicitly pled that General Shale had actual or constructive knowledge of the defect.[10] Doc. #47 at ¶ 18. Accordingly, the motion to dismiss based on the innocent seller provision must be **DENIED**.

---

[10] Such an allegation would seem to preclude dismissal even if the innocent seller provision was not an affirmative defense.

### C. Express Warranty Claim

Finally, General Shale seeks dismissal on the express warranty claims based on the argument that General Shale did not offer an express warranty to Plaintiffs. Doc. #49 at 8. Plaintiffs have not responded to this argument and may be deemed to have waived these claims. *U.S. ex rel. Woods v. SouthernCare, Inc.*, No. 3:09-cv-00313, 2013 WL 1339375, at *7 (S.D. Miss. Mar. 30, 2013) (collecting cases). Nevertheless, out of an abundance of caution, the Court will consider the claim on the merits.

Where, as here, a plaintiff relies on a manufacturer warranty against a seller, a cause of action will not arise unless the seller "embraced [the] warranty in any capacity other than as an agent of [the manufacturer]." *Wright v. Paul Moak Pontiac, Inc.*, 828 So.2d 201, 202 (Miss. Ct. App. 2001). Plaintiffs' complaint does not allege that General Shale offered Plaintiffs an express warranty independent of Fire Rock's, or acted in any capacity other than as an agent of Fire Rock. Accordingly, the motion to dismiss the express warranty claims brought against General Shale must be **GRANTED**.

### IV
### Conclusion

For the reasons above, General Shale's motion to dismiss [48] is **GRANTED in part and DENIED in part**. The motion is **GRANTED** with respect to Plaintiffs' express warranty claims, and **DENIED** in all other respects.

SO ORDERED, this the 22nd day of August, 2014.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**